FARHAD NOVIAN (SBN 118129)
farhad@novianlaw.com
JAMIE D. VOGEL (SBN 307810)
vogel@novianlaw.com
MATTHEW J. NOVIAN, (SBN 324144)
matthew@novianlaw.com
**NOVIAN & NOVIAN LLP**
1801 Century Park East, Suite 1201
Los Angeles, California 90067

Telephone:   (310) 553-1222
Facsimile:   (310) 553-0222

Attorneys for Plaintiff
DOCTORNOW, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| DOCTORNOW, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CIGNA CORPORATION, a Delaware corporation; CIGNA HEALTH AND LIFE INSURANCE COMPANY, a Connecticut corporation; CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a Connecticut corporation; CIGNA HEALTH MANAGEMENT, INC., a Delaware corporation; CIGNA HEALTHCARE OF CALIFORNIA, INC., a California; and DOES 1-25, inclusive, <br><br> Defendants. | CASE NO.: 2:24-cv-06139-FLA-MAR <br><br> **FIRST AMENDED COMPLAINT** <br><br> 1. **Unfair Competition Law – Cal. Bus. & Prof. Code § 17200** <br> 2. **Fraud** <br> 3. **Negligent Misrepresentation** <br> 4. **Negligence** <br> 5. **Unjust Enrichment** <br> 6. **Quantum Meruit** <br> 7. **Goods and Services Rendered** <br> 8. **Money Had and Received** <br> 9. **Open Book Account** <br> 10. **Account Stated** <br> 11. **Violation of Cal. Health & Saf. Code § 1342.2** <br> 12. **Promissory Estoppel** <br> 13. **Declaratory and Injunctive Relief** <br><br> **DEMAND FOR JURY TRIAL** <br><br> Filing Date:    June 14, 2024 <br> Removal Date:    July 22, 2024 |

FIRST AMENDED COMPLAINT

Plaintiff, DoctorNow ("DoctorNow" or "Plaintiff"), hereby alleges against Defendants Cigna Corporation ("Cigna Corp"), Cigna Health and Life Insurance Company ("Cigna Health and Life"), Connecticut General Life Insurance Company ("Connecticut General"), Cigna Health Management, Inc. ("Cigna Health Management"), Cigna Healthcare of California, Inc. ("Cigna Healthcare CA"), and DOES 1 through 25, inclusive, (collectively "Cigna" or "Defendants"), as follows:

## I.

## THE PARTIES

1. Plaintiff DoctorNow is a corporation duly organized and existing under the laws of the State of California. DoctorNow is a moderate complexity diagnostic laboratory, licensed with the California Department of Public Health ("CDPH") and accredited under the Clinical Laboratory Improvement Amendments of 1988 ("CLIA"), that tests patient specimens to determine the presence and absence of the SARs CoV-2 Virus ("COVID-19"). DoctorNow administers in vitro diagnostic tests approved under section 564(b)(1) of the Federal Food, Drug, and Cosmetic Act, and therefore, is authorized to provide and receive reimbursement for COVID-19 testing as well as items and services related to the furnishing of such tests. DoctorNow is a high-volume COVID-19 testing laboratory with a short turnaround time for results, which was and is vital for keeping Californians safe and combating the pandemic. During its pandemic response efforts, DoctorNow consistently published its cash prices for COVID-19 testing and services on its public website.

2. On information and belief, Defendant Cigna Corp is a Delaware corporation that conducts insurance operations throughout California, representing to consumers that Cigna Corp, together with its subsidiaries is a global health service organization. Cigna Corp has a license to use the federally registered service mark "Cigna," markets and issues health insurance and insures, administers, and makes coverage and benefit determinations related to various federal and state laws at issue in this action through its various wholly-owned and controlled subsidiaries and

- 1 -

FIRST AMENDED COMPLAINT

agents, and undisclosed principals and agents, including, but not limited to, Defendants Cigna Health and Life, Connecticut General, Cigna Health Management, Cigna Healthcare CA, and Does 1 through 25, inclusive, under the name "Cigna." Cigna Corp is registered with the California Secretary of State to transact business in California, is licensed and regulated by the California Department of Insurance ("CDI") and the California Department of Managed Health Care ("CDMHC") to transact the business of insurance in the State of California, is in fact transacting the business of insurance throughout the State of California, including, but not limited to, Los Angeles, and is thereby subject to the laws and regulations of the State of California.

3.     On information and belief, Defendant Cigna Health and Life is a Connecticut corporation that conducts insurance operations throughout California. Cigna Health and Life markets and issues health insurance and insures, administers, and makes coverage and benefit determinations related to various federal and state laws at issue in this action, and participates in the claims administration process related to plans insured, managed and/or administered by Cigna and its subsidiaries and affiliates. Cigna Health and Life is registered with the California Secretary of State to transact business in California, is licensed and regulated by the CDI and CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance throughout the State of California, including, but not limited to, Los Angeles, and is thereby subject to the laws and regulations of the State of California.

4.     On information and belief, Defendant Connecticut General is a Connecticut corporation that conducts insurance operations throughout California. Connecticut General markets and issues health insurance and insures, administers, and makes coverage and benefit determinations related to various federal and state laws at issue in this action, and participates in the claims administration process related to plans insured, managed and/or administered by Cigna and its subsidiaries

- 2 -

FIRST AMENDED COMPLAINT

and affiliates. Connecticut General is registered with the California Secretary of State to transact business in California, is licensed and regulated by the CDI and CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance throughout the State of California, including, but not limited to, Los Angeles, and is thereby subject to the laws and regulations of the State of California.

5. On information and belief, Defendant Cigna Health Management is a Delaware corporation that conducts insurance operations throughout California. Cigna Health Management markets and issues health insurance and insures, administers, and makes coverage and benefit determinations related to various federal and state laws at issue in this action, and participates in the claims administration process related to plans insured, managed and/or administered by Cigna and its subsidiaries and affiliates. Cigna Health Management is registered with the California Secretary of State to transact business in California, is licensed and regulated by the CDI and CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance throughout the State of California, including, but not limited to, Los Angeles, and is thereby subject to the laws and regulations of the State of California.

6. On information and belief, Defendant Cigna Healthcare CA is a Delaware corporation that conducts insurance operations throughout California. Cigna Healthcare CA markets and issues health insurance and insures, administers, and makes coverage and benefit determinations related to various federal and state laws at issue in this action, and participates in the claims administration process related to plans insured, managed and/or administered by Cigna and its subsidiaries and affiliates. Cigna Healthcare CA is registered with the California Secretary of State to transact business in California, is licensed and regulated by the CDI and CDMHC to transact the business of insurance in the State of California, is in fact transacting the business of insurance throughout the State of California, including, but

FIRST AMENDED COMPLAINT

not limited to, Los Angeles, and is thereby subject to the laws and regulations of the State of California.

7. DoctorNow does not know the true names and capacities, whether individual, corporate, associate, or otherwise, of defendants designated as Does 1 through 25 at this time and therefore designated those defendants by such fictitious names. DoctorNow will amend this Complaint, if necessary, to allege the true names and capacities of these defendants designated as Does once their true names and capacities are ascertained. DoctorNow is informed and believes, and based thereon alleges, that each of the named and fictitiously named Defendants are involved in and responsible for the events, transactions and/or occurrences alleged herein, as well as the herein damages caused to DoctorNow.

8. DoctorNow is informed and believes that Defendants constitute a group health plan and/or a health insurance issuer offering group or individual health insurance coverage as referenced in section 6001(a) of the Families First Coronavirus Response Act[1] ("FFCRA") and section 3202(a) of the Coronavirus Aid, Relief, and Economic Security Act[2] ("CARES Act").

9. DoctorNow is informed and believes that Defendants also constitute a health care service plan as referenced in section 1342.2(a) of the California Health and Safety Code ("Cal. Health & Saf. Code").

10. DoctorNow is informed and believes that, at all relevant times, each of the Defendants was and is the agent, servant, representative, undisclosed principal and/or alter ego of each of the other Defendants, and in doing the things herein alleged, each of the Defendants was acting within the scope of its authority as such

---

[1] *See* 116 P.L. 127, 2020 Enacted H.R. 6201, 116 Enacted H.R. 6201, 134 Stat. 178 (cited herein as the FFCRA).

[2] *See* 116 P.L. 136, 2020 Enacted H.R. 748, 116 Enacted H.R. 748, 134 Stat. 281 (cited herein as the CARES Act).

- 4 -

FIRST AMENDED COMPLAINT

agent, servant, representative, undisclosed principal and/or alter ego, and with the permission and consent of each of the other Defendants.

11.    DoctorNow is informed and believes that, at all relevant times, Defendants are the alter egos of the other Defendants, have comingled assets, have comingled business operations, have undercapitalized operations, have ignored corporate formalities, and have exercised such dominion and control over the operations of the other Defendants that it would be unjust to permit such Defendants to avoid individual liability.  DoctorNow is further informed and believes, that a unity of interest and ownership exists between Defendants, that any individuality and separateness between Defendants have ceased, and that Defendants are the alter egos of one another.  On information and belief, DoctorNow understands and believes that Defendants share the same common ownership, places of business, managements, and operate as a single enterprise.

12.    DoctorNow is informed and believes that, at all relevant times, each of the Defendants formed and operated a conspiracy with each of the other Defendants to perform the acts alleged herein, in furtherance of a common design to place profits over patients and damage clinical laboratories, like DoctorNow, working on the front lines to keep Californians safe and help end the spread of the COVID-19 virus and end the pandemic, and with knowledge that the conduct alleged herein of each of the Defendants constituted violations of law and provided substantial assistance or encouragement to each other to so act against insured patients and clinical laboratories, including DoctorNow.

## II.

## JURISIDCTION AND VENUE

13.    This Court has subject matter jurisdiction and personal jurisdiction in this case pursuant to California Code of Civil Procedure ("CCP") section 410.10.

- 5 -

FIRST AMENDED COMPLAINT

14. California state law, as embodied in California common law and statutory authority, controls and governs Defendants' conduct because of their presence in and contacts with California.

15. The amount in controversy is more than $25,000 and is therefore subject to the jurisdiction of the Superior Court of California.

16. Venue is proper in this Court pursuant to CCP section 395 because the laboratory testing facility operated by Plaintiff is located in Los Angeles, and the tests performed by Plaintiff that form the basis of this complaint were completed in Los Angeles, which is located in this county.

## III.

## STATEMENT OF FACTS

### A.    Introduction

17. DoctorNow performed COVID-19 antigen and PCR testing of patient specimens at its laboratory ("COVID-19 Testing" or "Testing").  DoctorNow also performed certain COVID-19 services relating to the collection of patient specimens and medical consultations, utilizing additional supplies, materials, and staff ("COVID-19 Services" or "Services").  In addition to collecting specimens at skilled nursing facilities, assisted living facilities, and patient homes, DoctorNow also collected specimens at its locations in Beverly Hills and Los Angeles, California. DoctorNow also received specimens from other healthcare providers primarily for COVID-19 PCR Testing.  DoctorNow and its employees were on the front lines, working to keep Californians safe and help stop the spread of COVID-19, aiming to bring an end to the pandemic.

18. DoctorNow submitted claims to Defendants for payment and reimbursement for the COVID-19 Testing and Services that DoctorNow performed for patients insured by Defendants.

19. Defendants' obligation to cover and pay for COVID-19 Testing and Services is clear and mandated by federal and California law.  Pursuant to the FFCRA,

- 6 -

FIRST AMENDED COMPLAINT

CARES Act, and Cal. Health & Saf. Code, health insurers, like Defendants, must provide coverage and reimburse DoctorNow (and other out-of-network health care providers) for COVID-19 Testing and Services at the provider's published cash price. *See* FFCRA § 6001(a); CARES Act § 3202(a); Cal. Health & Saf. Code § 1342.2(a).[3]

20.    Defendants injured and damaged DoctorNow by improperly denying payment or by paying DoctorNow less than its published cash price for the COVID-19 Testing and Services, in violation of federal and California law.

21.    COVID-19 testing served as one of the most effective methods for combatting the recent Covid-19 global pandemic.  Recognizing this, Congress passed the FFCRA and the CARES Act to ensure, amongst other things, widespread access to testing by requiring health insurers to provide full coverage and reimbursement for COVID-19 Testing and Services to providers such as DoctorNow.  The requirement for health insurers to pay and reimburse providers like DoctorNow was also confirmed independently at the state level in California, as codified by section 1342.2 of the Cal. Health & Saf. Code.

22.    Rather than complying with these laws by streamlining payment for vital testing and services during a pandemic, Defendants did the opposite by implementing policies and procedures to systematically deny payment and underpay for COVID-19 Testing and Services, thereby undermining the clear mandates of the FFCRA, CARES Act, and Cal. Health & Saf. Code section 1342.2.

23.    Defendants engaged in unlawful, unfair, and unjustifiable conduct during the ongoing COVID-19 pandemic by implementing said practices and procedures in an attempt to evade their obligations to provide full payment and

---

[3] DoctorNow did not pursue reimbursement from Defendants' insureds for amounts underpaid because: (a) the law requires Defendants to properly and fully reimburse DoctorNow at its published cash price; and (b) the law, including the CARES Act, requires insures, like Defendants, to waive all patient cost share amounts, such as deductibles, copays, and coinsurance.  Therefore, it was incumbent on Defendants to cover and pay 100% of the costs for COVID-19 Testing and Services.

FIRST AMENDED COMPLAINT

reimbursement to DoctorNow and other healthcare providers for COVID-19 Testing and Services, as required under both federal and California law.

24. In doing so, Defendants violated federal and California law, jeopardizing the health and safety of countless members of the public.

25. Defendants' ongoing refusal to provide statutorily required payment deprived DoctorNow, and numerous other out-of-network providers, of owed payments, thwarting and discouraging testing efforts during the public health emergency.

26. This action encompasses various claims for damages and comprehensive relief. Firstly, DoctorNow is pursuing damages against Defendants for their wrongful denial and underpayment for COVID-19 Testing and Services. Additionally, DoctorNow seeks proper reimbursement for the COVID-19 Testing and Services it provided, emphasizing the importance of accurate compensation. A crucial aspect of the lawsuit involves a request for an injunction to restrain and prevent the ongoing illegal practices of Defendants, particularly claims for services provided during the public health emergency and any potential future public health emergencies. Furthermore, DoctorNow is seeking a court order compelling Defendants to turn over the amounts earned by DoctorNow and other out-of-network providers for the COVID-19 Testing and Services provided. To address the delayed payments and acknowledge the gravity of the situation, DoctorNow demands prompt payment penalties at a rate of 15 percent per annum, as per Cal. Health & Saf. Code section 1371. Moreover, the lawsuit includes a claim for prejudgment interest at a rate of at least 7 percent per year, coupled with a request for attorney's fees. Moreover, DoctorNow is pursuing punitive damages against Defendants for their oppressive, fraudulent, and malicious conduct. These collective claims underscore the multifaceted relief sought by DoctorNow to rectify the adverse consequences resulting from Defendants' actions during the public health emergency, while

FIRST AMENDED COMPLAINT

establishing a precedent for addressing similar circumstances in potential future public health emergencies.

## B.    Defendants Must Pay DoctorNow For COVID-19 Testing and Services Under THE FFCRA And CARES Act

27.    In 2020, the global Coronavirus (COVID-19) pandemic broke out.  The number of confirmed cases of COVID-19 worldwide is in the hundreds of millions. According to the Centers for Disease Control and Prevention ("CDC"), in the U.S. alone there have been more than 6.8 million confirmed COVID-19 hospitalizations and more than 1.1 million confirmed COVID-19 deaths, making it one of the deadliest pandemics in world history.[4]

28.    On January 31, 2020, the U.S. Secretary of Health and Human Services issued a determination, pursuant to section 319 of the Public Health Service Act, that a Public Health Emergency ("PHE") exists and had existed since January 27, 2020, as a result of confirmed cases of COVID-19 throughout the country.[5]

29.    On March 13, 2020, the President of the United States issued Proclamation 9994 declaring that the COVID-19 outbreak constituted a National Emergency.[6]

30.    Widespread, prompt access to COVID-19 testing and related services was critical to controlling the pandemic and mitigating casualties.

31.    Early detection of COVID-19 helps prevent the spread of the disease and allows COVID-19 positive patients to get treatment, as necessary, that may prevent long-term complications that would require more expensive treatment.

---

[4] CDC, COVID Data Tracker, to https://covid.cdc.gov/covid-data-tracker/#maps_deaths-total, (last accessed March 25, 2024).

[5] *See* Determination that a PHE exists (January 31, 2020), https://aspr.hhs.gov/legal/PHE/Pages/2019-nCoV.aspx.

[6] *See* Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 18, 2020), https://www.federalregister.gov/documents/2020/03/18/2020-05794/declaring-a-national-emergency-concerning-the-novel-coronavirus-disease-covid-19-outbreak.

FIRST AMENDED COMPLAINT

32.     To address some of the novel challenges wrought by the COVID-19 pandemic and to facilitate a unified national response, Congress passed the FFCRA on March 18, 2020.  In relevant part, the FFCRA states that a health insurer "shall provide coverage, and shall not impose any cost sharing (including deductibles, copayments, and coinsurance) requirements or prior authorization or other medical management requirements" for diagnostic tests for the detection or diagnosis of the virus that causes COVID-19 as well as items and services related to such tests. *See* FFCRA § 6001(a); CARES Act § 3201.

33.     On March 27, 2020, Congress passed the CARES Act, which amended the FFCRA and broadened the scope of coverage to include diagnostic tests that have not yet received emergency use authorization.

34.     Importantly, the CARES Act unambiguously establishes the rule for determining the price that health insurers must pay to providers for COVID-19 Testing.

35.     Section 3202 of the CARES Act, entitled "Pricing of Diagnostic Testing," provides:

> (a) Reimbursement Rates.— A group health plan or a health insurance issuer providing coverage of items and services described in section 6001(a) of division F of the Families First Coronavirus Response Act (Public Law 116-127) with respect to an enrollee *shall reimburse the provider of the diagnostic testing as follows*:
>
> (1) If the health plan or issuer has a negotiated rate with such provider in effect before the public health emergency declared under section 319 of the Public Health Service Act (42 U.S.C. 247d), such negotiated rate shall apply throughout the period of such declaration.
>
> (2) *If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website,* or such plan or issuer may negotiate a rate with such provider for less than such cash price.
> *See* CARES Act, § 3202(a) (emphasis added).

- 10 -

FIRST AMENDED COMPLAINT

36.    The CARES Act confirms that when providers are outside the insurer's network, like DoctorNow, health insurers, like Defendants, "**shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website**." *Id.* (emphasis added).

37.    DoctorNow is outside of Defendants' network and does not have a negotiated price for COVID-19 Testing and Services or any negotiated pricing with Defendants.

38.    DoctorNow has diligently maintained transparency in its provision of COVID-19 Testing and Services by consistently publishing corresponding cash prices on its public internet website throughout the duration of its pandemic response efforts. The published cash prices, reflecting the actual amounts billed to Defendants, are listed on DoctorNow's official website at https://www.doctornow.net/covidcashprice and https://www.mydoctornow.net/covid-19-cash-prices. Reference is also made to Exhibit A, which contains a comprehensive depiction of DoctorNow's published cash prices for the services, attached hereto.  DoctorNow adhered to the procedural requirements stipulated in the CARES Act when disseminating its published cash prices on its website.  Consequently, in accordance with the mandates of the law, Defendants are obligated to remit payment for DoctorNow's billed price for COVID-19 Testing and Services.

39.    In addition to the COVID-19 diagnostic testing itself, the FFCRA and the CARES Act also require Defendants to pay DoctorNow for "items and services"

- 11 -

FIRST AMENDED COMPLAINT

related to COVID-19 Testing.  *See* FFCRA § 6001(a)(2); CARES Act, § 3202(a) (quoted above).[7]

40.    To provide ongoing guidance related to the coverage of COVID-19 testing, the Department of Labor, the Department of Health and Human Services, and the Department of the Treasury (collectively, the "Departments") jointly prepared and issued a series of Frequently Asked Questions ("FAQs").

41.    The following FAQs summarize health insurers' obligations as they pertain to coverage and reimbursement for COVID-19 Testing and Services:

- **FAQs, Part 42, Question 3**: *What items and services must plans and issuers provide benefits for under section 6001 of the FFCRA?*

  Section 6001(a) of the FFCRA, as amended by Section 3201 of the CARES Act, **requires plans and issuers to provide coverage for the following items and services:**

  (1) An in vitro diagnostic test as defined in section 809.3 of title 21, Code of Federal Regulations, (or its successor regulations) for the detection of SARS-CoV-2 or the diagnosis of COVID-19, **and the administration of such a test, that** –…

  B. The developer has requested, or intends to request, emergency use authorization under section 564 of the Federal Food, Drug, and Cosmetic Act

---

[7] FFCRA § 6001(a)(2) describes these "items and services" as those that are "furnished to an individual during health care provider office visits (which term in this paragraph includes in-person visits and telehealth visits), urgent care center visits, and emergency room visits that result in an order for or administration of an in vitro product described in paragraph (1)."  However, sub-regulatory guidance published jointly by the Departments of Labor, Health and Human Services, and the Treasury clarifies that "[t]he Departments construe the term 'visit' in section 6001(a)(2) of the FFCRA broadly to include both traditional and non-traditional care settings in which a COVID-19 diagnostic test described in section 6001(a)(1) of the FFCRA is ordered or administered, including COVID-19 drive-through testing sites where licensed healthcare providers are administering COVID-19 diagnostic testing. Therefore, the items and services described in section 6001(a) of the FFCRA as amended by section 3201 of the CARES Act, must be covered when furnished in non-traditional settings, as well as when provided in traditional settings."  *See* FAQs, Part 42, Question 8, https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-42.pdf.

- 12 -

FIRST AMENDED COMPLAINT

(21 U.S.C. 360bbb-3), unless and until the emergency use authorization request under such section 564 has been denied or the developer of such test does not submit a request under such section within a reasonable timeframe…

(2) **Items and services furnished to an individual … that result in an order for or administration of an in vitro diagnostic product described in paragraph (1)…**[8]

- **FAQs, Part 42, Question 7**: *Are plans and issuers required to provide coverage for items and services that are furnished by providers that have not agreed to accept a negotiated rate as payment in full (i.e., out-of-network providers)?*

Yes.   Section 3202(a) of the CARES Act provides that a plan or issuer providing coverage of items and services described in section 6001(a) of the FFCRA shall reimburse the provider of the diagnostic testing as follows: …

**2. If the plan or issuer does not have a negotiated rate with such provider, the plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website…**[9]

- **FAQs, Part 42, Question 6**: *May a plan or issuer impose any cost-sharing requirements, prior authorization, or medical management requirements for benefits that must be provided under section 6001(a) of the FFCRA, as amended by section 3201 of the CARES Act?*

No. Section 6001(a) of the FFCRA provides that plans and issuers shall not impose any cost-sharing requirements (including deductibles, copayments, and coinsurance), prior authorization requirements, or other medical management requirements for these items and services…[10]

---

[8] *See* FAQs, Part 42, Question 3 https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-42.pdf (emphasis added).

[9] *See* FAQs, Part 42, Question 7 https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-42.pdf (emphasis added).

[10] *See* FAQs, Part 42, Question 6, https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-42.pdf (emphasis added).

FIRST AMENDED COMPLAINT

- **FAQs, Part 44, Question 1**: *Under the FFCRA, can plans and issuers use medical screening criteria to deny (or impose cost sharing on) a claim for COVID-19 diagnostic testing for an asymptomatic person who has no known or suspected exposure to COVID-19?*

  No.   The FFCRA prohibits plans and issuers from imposing medical management, including specific medical screening criteria, on coverage of COVID-19 diagnostic testing.  Plans and issuers cannot require the presence of symptoms or a recent known or suspected exposure, or otherwise impose medical screening criteria on coverage of tests.

  When an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized health care provider, or when a licensed or authorized health care provider refers an individual for a COVID-19 diagnostic test, plans and issuers generally must assume that the receipt of the test reflects an "individualized clinical assessment" and the test should be covered without cost sharing, prior authorization, or other medical management requirements. …[11]

- **FAQs, Part 44, Question 3**: *Under the FFCRA, are plans and issuers required to cover COVID-19 diagnostic tests provided through state- or locality-administered testing sites?*

  Yes.  As stated in FAQs Part 43, Q3, any health care provider acting within the scope of their license or authorization can make an individualized clinical assessment regarding COVID-19 diagnostic testing.  If an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized provider, including from a state- or locality-administered site, a "drive-through" site, and/or a site that does not require appointments, plans and issuers generally must assume that the receipt of the test reflects an "individualized clinical assessment."[12]

C.     **Defendants Must Also Pay DoctorNow For COVID-19 Testing and Services Under Cal. Health & Saf. Code Section 1342.2**

---

[11] *See* FAQs, Part 44, Question 1, https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/aca-part-44.pdf.

[12] *See* FAQs, Part 44, Question 3, https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/aca-part-44.pdf.

- 14 -

FIRST AMENDED COMPLAINT

42.   In addition to their obligations under federal law (the FFCRA and CARES Act), Defendants are also obligated to pay DoctorNow for the COVID-19 Testing and Services performed for Defendants' insureds under California law.

43.   On March 4, 2020, pursuant to Government Code section 8625, Governor Gavin Newsom of California issued a proclamation declaring a State of Emergency in response to the COVID-19 pandemic.[13]

44.   California later passed legislation mirroring coverage and payment requirements of the FFCRA and CARES Act.   On October 8, 2021, Governor Newsom signed California Senate Bill No. 510 into law, which was later codified as section 1342.2 of the Cal. Health & Saf. Code.   Although Section 1342.2 officially went into effect on January 1, 2022, it applies retroactively to the beginning of the Governor's declared State of Emergency on March 4, 2020.   *See* Cal. Health & Saf. Code § 1342.2(d).

45.   Section 1342.2 reaffirms the federal directive in the FFCRA and CARES Act that health insurers must pay for COVID-19 Testing and Services, and its language is clear:

> "Notwithstanding any other law, a health care service plan contract that covers medical, surgical, and hospital benefits … shall cover the costs for COVID-19 diagnostic and screening testing and health care services related to diagnostic and screening testing … regardless of whether the services are provided by an in-network or out-of-network provider."   Cal. Health & Saf. Code § 1342.2(a).
>
> …
>
> "**This section does not relieve a health care service plan from continuing to cover testing as required by federal law and guidance**."   Cal. Health & Saf. Code § 1342.2(f) (emphasis added).

---

[13] *See* Proclamation of a State of Emergency (March 4, 2020), https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf.

FIRST AMENDED COMPLAINT

46.    Like the FFCRA and CARES Act, section 1342.2 of the Cal. Health & Saf. Code forbids cost-sharing, prior authorization, or any other medical management requirements and expressly provides that "a health care service plan shall reimburse the provider" of COVID-19 testing services.  Cal. Health & Saf. Code § 1342.2(a)-(a)(4).[14]

**D.    DoctorNow Is Entitled to Full Payment For COVID-19 Testing and Services**

**1.    DoctorNow Is Entitled to Full Payment of Its Published Cash Price for Each Antigen Test and For Each PCR Tests from Defendants**

47.    Section 3202(a)(2) of the CARES Act requires that a "plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website…"  CARES Act § 3202(a)(2).

---

[14] The legislative notes for Cal. Health & Saf. Code 1342.2 provide in relevant part:

SEC. 1. The Legislature finds and declares that a significant public health crisis, including the crisis posed by the COVID-19 pandemic that is the subject of the state of emergency declared by the Governor of the State of California on March 4, 2020, necessitates legislation to ensure that individuals are not discouraged from seeking testing or vaccination due to cost sharing or prior authorization requirements. To ensure that health care service plans and health insurers do not impose cost sharing or prior authorization requirements that might discourage individuals from seeking and receiving testing and vaccinations for a pandemic condition, it is the intent of the Legislature in enacting this act to require coverage for testing costs without cost sharing or prior authorization and to require coverage for prevention recommended by the United States Preventive Services Task Force or the Advisory Committee on Immunization Practices of the federal Centers for Disease Control and Prevention. In this regard, the Legislature further finds and declares that this exercise of the police power imposes a reasonable condition that is of a character appropriate to the public purpose of ensuring that as many individuals as possible receive necessary testing and vaccination in response to a pandemic. *See* Cal. Health & Saf. Code § 1342.2, Stats 2021 ch 729 § 2 (SB 510).

FIRST AMENDED COMPLAINT

48. Since it began providing COVID-19 testing and services, DoctorNow continually listed on its public website the cash prices for the COVID-19 Tests it offers.[15]

49. DoctorNow does not have and has never had a negotiated rate for its COVID-19 Tests and Services with Defendants. At all relevant times, DoctorNow operated as an out-of-network provider.

50. Pursuant to section 3202(a)(2) of the CARES Act, where there is no negotiated rate for COVID-19 testing, health insurers "shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website." Therefore, Defendants are required to reimburse DoctorNow at its published cash price, as set forth in Exhibit A hereto, for COVID-19 Tests that it provided to patients insured through Defendants.

51. Instead, Defendants purposely denied payment and/or underpaid on thousands of claims submitted by DoctorNow for COVID-19 Testing, in violation of the law.

52. DoctorNow acquired and operated high throughput state-of-the-art COVID-19 testing equipment and incurred significant costs to consistently deliver reliable and timely results to patients in the Los Angeles, California metro area. DoctorNow was one of the few laboratories that consistently met expected turnaround times, which provided Defendants and their insureds with an enormous benefit.

**2. DoctorNow Is Entitled to Full Payment from Defendants on Its Claims for COVID-19 Services**

53. In addition to performing COVID-19 Testing, DoctorNow also performed Services that relate to the collection of patient specimens, medical consultations, and the utilization of additional supplies, materials, and staff, which

---

[15] DoctorNow's cash prices for the COVID-19 Tests it offered were listed on its public webpage (https://DoctorNow.net/covidcashprice and https://www.mydoctornow.net/covid-19-cash-prices), since it began providing such tests and services during the PHE.

- 17 -

FIRST AMENDED COMPLAINT

were necessitated by the pandemic.  In addition to collecting at skilled nursing facilities and patient homes, DoctorNow also collected specimens at its locations in Beverly Hills and Los Angeles, California.

54.    Since it began providing COVID-19 Testing and Services, DoctorNow continually listed on its public website the cash price for the COVID-19 Services it offers.  The published cash prices, reflecting the actual amounts billed to Defendants, are explicitly outlined on DoctorNow's official website at https://www.doctornow.net/covidcashprice and https://www.mydoctornow.net/covid-19-cash-prices.  Reference is also made to **Exhibit A** attached hereto, which contains a comprehensive depiction of DoctorNow's published cash prices for the Services.

55.    In accordance with the FFCRA, CARES Act, Cal. Health & Saf. Code section 1342.2(a), and state law, Defendants are obligated to remit payment to DoctorNow for the COVID-19 Services at DoctorNow's published cash prices.

56.    However, Defendants purposely denied payment and underpaid on thousands of claims submitted by DoctorNow for COVID-19 Tests and Services, in violation of the law.

**E.    Defendants Unlawfully Denied Payment, Failed to Pay and Underpaid on DoctorNow's Claims For COVID-19 Testing and Services**

57.    The federal mandate (as set forth in the FFCRA and the CARES Act) and the State of California's mandate are clear and decisive.  Health insurers, like Defendants, must cover and reimburse claims for COVID-19 Testing and Services to providers, like DoctorNow, regardless of the terms of an insured's plan and without imposing the typical obstacles or engaging in the gamesmanship that insurers often utilize to deny payment and underpay provider claims.

58.    Nevertheless, Defendants ignored their legal obligations and frustrated pandemic relief efforts by shamelessly denying payment or underpaying on

- 18 -

FIRST AMENDED COMPLAINT

DoctorNow's claims for COVID-19 Testing and Services. For more than three years, during the PHE, Defendants purposely failed to establish a straightforward method for providers, such as DoctorNow, to submit their published cash price, in order for said providers to be reimbursed properly.

/ / /

59. DoctorNow is informed and believes that Defendants also denied payment and underpaid on COVID-19 testing and service-related reimbursement claims submitted by other providers.

60. Defendants implemented policies and procedures to dispute and deny payment on the COVID-19 Testing and Services claims submitted by DoctorNow and other providers in violation of the FFCRA, CARES Act, and Cal. Health and Saf. Code.

61. The underpayment and denial reasons provided by Defendants are not permitted by and violate the FFCRA, CARES Act, and Cal. Health & Saf. Code.[16]

62. The FFCRA, CARES Act, and Cal. Health & Saf. Code all require full reimbursement for COVID-19 Tests and Services and provide no basis for any denial reasons that Defendants put forward.

63. In addition to Defendants' improper payment denials, Defendants also either entirely failed to pay (without providing a denial reason) or underpaid COVID-19 claims submitted by DoctorNow in violation the FFCRA, CARES Act, and the Cal. Health & Saf. Code.

64. Defendants knew and understood that DoctorNow was providing COVID-19 Testing and Services to Defendants' insureds. Defendants communicated with DoctorNow regarding submitted claims, paid certain claims for COVID-19

---

[16] Defendants possess the electronic records for each claim submitted by DoctorNow, including their reasons for every denial and the amount paid for each claim that was only partially paid. As such, Defendants own records confirm the true amount owed to DoctorNow and the basis for every short payment.

FIRST AMENDED COMPLAINT

Testing and Services submitted by DoctorNow and were aware of the amounts that DoctorNow charged for COVID-19 Testing and Services.

65. Defendants received monies to pay for claims, including claims for COVID-19 Testing and Services provided to their insureds, and Defendants and their insureds benefitted from the COVID-19 Testing and Services that were provided by DoctorNow.

66. Defendants did pay certain claims for COVID-19 Testing and Services submitted by DoctorNow in full, thereby acknowledging and establishing their obligations and duty to fully reimburse DoctorNow for COVID-19 Testing and Services, and establishing a relationship, understanding, implied promise, and implied contract that Defendants would fully reimburse and pay DoctorNow's claims for COVID-19 Testing and Services, which DoctorNow relied upon.

67. By processing, payment, and the communications involved with DoctorNow's claim submissions, plus Defendants advising from time to time that claims submitted were processed and paid, Defendants impressed upon DoctorNow that they would honor the claims and remit payment to DoctorNow in accordance with federal and state mandates.

68. Defendants' representatives knew that they merely induced DoctorNow to continue to provide COVID-19 Tests and Services to Defendants' insureds, from whom Defendants collected premium payments, but Defendants intended to watch DoctorNow's claims increase, knowing that they would later refuse to pay DoctorNow for a substantial number of outstanding claims.

69. Even as the claims grew, due to prior processing, payment, and communication from Defendants' representatives, DoctorNow reasonably relied on the Defendants to pay subsequent claims.

70. Defendants' payment in full of certain claims for COVID-19 Testing and Services submitted by DoctorNow also constituted an implied request for DoctorNow to perform COVID-19 Testing and Services for Defendants' insureds and confirmed

- 20 -

FIRST AMENDED COMPLAINT

that Defendants benefitted from the performed services.

71. At any time after receipt of the first claim for COVID-19 Testing and Services submitted by DoctorNow, Defendants could have requested that DoctorNow stop performing such Testing and Services for their insureds. Defendants did not, but instead continued to benefit monetarily and from the care provided to their insureds by DoctorNow.

72. However, Defendants underpaid certain of DoctorNow's claims for COVID-19 Testing by unilaterally choosing to pay less than the published cash price for antigen tests and less than the published cash price for PCR tests that DoctorNow published on its public website. By underpaying DoctorNow's COVID-19 Testing claims, Defendants violated section 3202(a)(2) of the CARES Act, which states that "the plan or issuer shall reimburse the provider in an amount that equals the cash price listed by the provider on a public internet website." CARES Act §3202(a)(2). Defendants also violated the Cal. Health & Saf. Code section 1342.2.

73. In violation of FFCRA section 6001(a), CARES Act section 3202(a), and Cal. Health & Saf. Code section 1342.2(a)(4), Defendants also underpaid specific claims for COVID-19 Services by unilaterally electing to pay less than the published cash rate charged by DoctorNow for those Services.

74. The total amount that Defendants owe DoctorNow for improperly denying payment, failing to pay, and underpaying on the COVID-19 Testing and Services is not less than $5,778,655.99, plus prompt payment penalties at 15 percent per annum per, *inter alia*, Cal. Health & Saf. Code section 1371, prejudgment interest, and attorney's fees, among other relief. DoctorNow is not seeking reimbursement for any claims for which it does have a valid assignment.

75. DoctorNow possesses a vested interest and/or ownership in the amounts owed as DoctorNow performed the COVID-19 Testing and Services.

76. Defendants possess the electronic records for each claim submitted by DoctorNow, including their reasons for every denial and the amount withheld for each

- 21 -

FIRST AMENDED COMPLAINT

claim that was only partially paid.  As such, Defendants' records confirm the true amount owed to DoctorNow and enable Defendants to identify every claim that is at issue.

77. Defendants' claims processing policies and procedures related to COVID-19 Testing and Services violate federal and California state law.

78. DoctorNow is informed and believes that Defendants knew and understood their obligations under the FFCRA section 6001(a), CARES Act section 3202(a), and Cal. Health & Saf. Code section 1342.2(a), but failed to implement policies and procedures to assure compliance.

79. DoctorNow is informed and believes that by implementing their claims processing policies and procedures, Defendants conspired to violate the FFCRA, CARES Act, and Cal. Health & Saf. Code.

80. DoctorNow is informed and believes that Defendants knowingly and intentionally implemented their claims processing policies and procedures in violation of the FFCRA section 6001(a), CARES Act section 3201(a), and Cal. Health & Saf. Code section 1342.2(a).

81. DoctorNow is informed and believes that Defendants knowingly and intentionally failed to amend or change their claims processing policies and procedures to avoid continued violation of the FFCRA section 6001(a), CARES Act section 3202(a), and Cal. Health & Saf. Code section 1342.2(a).

82. Defendants' misconduct in the face of the COVID-19 pandemic was malicious, fraudulent, and oppressive.

83. Thus, DoctorNow brings this lawsuit to hold Defendants accountable for their blatant violations of the law during the pandemic and PHE, to recover and obtain turnover of amounts earned and legally owed to DoctorNow for COVID-19 Testing

FIRST AMENDED COMPLAINT

and Services, and to safeguard against future illegal practices by Defendants and other health insurers.[17]

## IV.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

(Against All Defendants for Unfair Competition Law – Cal. Bus. & Prof. Code § 17200, *et seq*.)

84.     DoctorNow restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

85.     The Unfair Competition Law ("UCL") defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

86.     Defendants constitute a health care service plan as that term is referenced in section 1342.2 of the Cal. Health & Saf. Code.

87.     Defendants also offer group health plans and/or are health insurance issuers offering group or individual health insurance coverage, as those terms are defined under section 6001 of FFCRA.

88.     The COVID-19 Testing and Services that DoctorNow provided to patients constitute diagnostic testing and health care items and services related to diagnostic testing as referenced in section 1342.2 of the Cal. Health & Saf. Code and section 6001 of the FFCRA.

89.     DoctorNow is an out-of-network provider that did not have a negotiated rate with Defendants for COVID-19 Testing and Services.

---

[17] DoctorNow is asserting claims for amounts that Defendants owe directly to DoctorNow and that Defendants are required to pay directly to DoctorNow pursuant to the FFCRA section 6001(a), CARES Act section 3202(a), and Cal. Health & Saf. Code section 1342.2(a). DoctorNow is not asserting any claims on behalf of patients or pursuant to any assignment of benefits. DoctorNow is not seeking reimbursement for any claims for which it does have a valid assignment.

FIRST AMENDED COMPLAINT

90. Under section 3202(a)(2) of the CARES Act, if a health insurer does not have a negotiated rate with a provider, such as DoctorNow, for the provision of COVID-19 Testing and Services, the health insurer must pay the provider, like DoctorNow, its published cash price.

91. In compliance with the CARES Act, DoctorNow published and listed its cash prices for COVID-19 Testing and Services on its public website.

92. The FFCRA section 6001(a) and CARES Act section 3202(a) also require insurers, like Defendants, to pay COVID-19 claims.

93. Under section 1342.2(a)(4) of the Cal. Health & Saf. Code, if an out-of-network provider does not have a negotiated rate, the health care service plan is obligated to reimburse the provider per the CARES Act and FFCRA during the PHE, which applies to all claims addressed in this complaint.

94. Defendants improperly denied payment, failed to pay, and underpaid on claims for COVID-19 Testing and Services submitted to them by DoctorNow and other providers in violation of the FFCRA, CARES Act, and Cal. Health & Saf. Code.

95. Defendants implemented practices and procedures that resulted in Defendants' refusal to pay, failure to pay, and underpayment on claims for COVID-19 Testing and Services submitted to them by DoctorNow and other providers in violation of the FFCRA, CARES Act, and Cal. Health & Saf. Code.

96. DoctorNow, having provided COVID-19 Testing and Services to individuals insured by Defendants and having properly submitted claims to Defendants for reimbursement, has a legitimate, non-attenuated ownership interest in the earned amounts Defendants have withheld from it in violation of the FFCRA, CARES Act, and Cal. Health & Saf. Code.

97. Defendants, despite numerous and persistent demands and requests, have failed and refused to provide adequate reimbursement for claims submitted to them by DoctorNow for COVID-19 Testing and Services.

98. Defendants' business practices, as set forth above, constitute unlawful

- 24 -

FIRST AMENDED COMPLAINT

and unfair business practices within the meaning of the UCL.

99. DoctorNow has a vested interest in the quantifiable sum, representing the earned amounts not paid to DoctorNow by Defendants for COVID-19 Testing and Services in violation of the FFCRA section 6001, CARES Act section 3202, and Cal. Health & Saf. Code section 1342.2.

100. The COVID-19 Testing and Services performed by DoctorNow significantly affected the public interest, in that they were and are a vital component of efforts undertaken to combat a global pandemic (and any future pandemic). Accordingly, DoctorNow's COVID-19 Testing and Services have conferred a substantial benefit on the general public. Defendants' behavior inhibited the ability of laboratories like DoctorNow to conduct COVID-19 Testing and Services as part of a broader effort to mitigate the harm and death caused by the global pandemic.

101. Pursuant to the UCL, DoctorNow is entitled to and seeks preliminary and permanent injunctive relief that orders Defendants to cease this unfair competition as to DoctorNow and other out-of-network providers, as well as disgorgement and restitution for the amounts not paid to DoctorNow in violation of the FFCRA section 6001, CARES Act section 3202, and Cal. Health & Saf. Code section 1342.2.

## SECOND CAUSE OF ACTION

(Against All Defendants for Fraud)

102. DoctorNow restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

103. Defendants misrepresented coverage and reimbursement for DoctorNow's COVID-19 Testing and Services.

104. For instance, Defendants represented to their members that they could go anywhere for COVID-19 testing, the cost of which would be 100% covered. DoctorNow is informed and believes that Defendants made this representation so Defendants could be in compliance with federal and state laws requiring coverage for COVID-19 Testing and Services.

- 25 -

FIRST AMENDED COMPLAINT

105. Federal and state laws require Defendants to pay DoctorNow for COVID-19 Tests and Services that DoctorNow provided to Defendants' insureds at DoctorNow's published cash prices. Nevertheless, Defendants denied or underpaid claims for impermissible reasons (or for no reason at all) submitted by DoctorNow in violation the FFCRA, CARES Act, and Cal. Health & Saf. Code. These denials and underpayments affected thousands of claims.

106. Defendants also concealed vital information from DoctorNow, including their true intention not to pay for the Tests and Services. This was done by Defendants with the secret intent of inducing DoctorNow to continue providing COVID-19 Testing and Services to Defendants' insureds without compensation; all to the financial detriment and harm to DoctorNow.

107. DoctorNow submitted numerous appeals to Defendants, requesting Defendants to reimburse its claims for COVID-19 Testing and Services as mandated by the FFCRA, CARES Act, and Cal. Health & Saf. Code. Defendants failed to address these issues and repeatedly denied valid appeals DoctorNow submitted. Due to the continued reimbursement issues impacting thousands of claims, DoctorNow reached out to the California Department of Managed Care ("CDMHC") for assistance in resolving these reimbursement issues with Defendants. The CDMHC reached out to Defendants on behalf of DoctorNow and eventually William S. Jameson, Cigna Legal – West Coast on behalf of Defendant, contacted DoctorNow.

108. Mr. Jameson, Cigna Legal – West Coast on behalf of Defendants, advised and represented to DoctorNow that COVID-19 Testing claims would be paid at DoctorNow's published cash price. On several occasions, Mr. Jameson assured DoctorNow that all COVID-19 Testing and Services claims would be reprocessed at the correct reimbursement rate based on DoctorNow's published Cash Price. Specifically, on June 9, 2022, at 11:01 am PST, Mr. Jameson wrote an email to Michael Anvar of DoctorNow stating: "I have secured approval to reprocess all of your claims for testing that were paid at levels below what we believe is your

FIRST AMENDED COMPLAINT

published price." Mr. Jameson knew full-well that the published cash rates for DoctorNow were the same as those refenced in **Exhibit A** to this Complaint based on prior email correspondence between Michael Anvar of DoctorNow and Mr. Jameson. Then, on August 8, 2022, Mr. Jameson, while on a call with Michael Anvar and Ellen Kamon of DoctorNow made assurances that DoctorNow's cash rate had been approved and updated in Defendants' claims processing system, as to be in compliance with the CARES ACT, so that past and future billing issues would be resolved. These statements were made to induce DoctorNow to continue testing Defendants' insureds and preempt any further action based on DoctorNow's reliance on Mr. Jameson's statements. Defendants' plan was successful; DoctorNow did indeed rely on these representations and continued testing Defendants' insureds. What DoctorNow did not realize at the time was Defendants had no intention of properly reimbursing DoctorNow based on its published cash price, and Defendants only made these false promises to secure its continued service.

109. Moreover, Mr. Jameson assured DoctorNow that Defendants were updating their claims system with DoctorNow's published case prices so that existing and future claims would be processed and paid correctly.

110. Mr. Jameson successfully initiated the reprocessing of some of DoctorNow's claims at the correct reimbursement rate. Nevertheless, thousands of claims were never addressed by Defendants, which claims remain unpaid or underpaid. DoctorNow followed up with Mr. Jameson repeatedly, asking that the remaining outstanding claims be reprocessed at DoctorNow's published cash rate, which Mr. Jameson previously acknowledged to be the correct reimbursement rate per the CARES ACT. DoctorNow was advised by Mr. Jameson that the matter would be resolved. Based on this, DoctorNow continued to provide COVID-19 Testing and Services to Defendants' insureds. However, no further corrective action was taken by Defendants to correct the situation and properly pay DoctorNow's claims. Eventually, Mr. Jameson simply ignored DoctorNow's follow up communications,

FIRST AMENDED COMPLAINT

emails, and voicemails.

111. Likewise, Carolyn P. Trivett, Cigna Special Investigations Unit, on behalf of Defendants, stated and represented in an email to DoctorNow that COVID-19 Services for specimen collection (CPT Code G2023) is covered by Defendants. Specifically, in a January 15, 2021 email correspondence, Ms. Trivett wrote to Michael Anvar of DoctorNow stating "as we discussed, the specimen collection service is covered by Cigna. The correct code for COVID-19 specimen collection is G2023." Additionally, Defendants' website also made numerous representations that specimen collection was a payable code and that Defendants followed Center for Medicare and Medicaid Services ("CMS") Guidelines. Yet, despite these representations, Defendants denied specimen collection CPT Code G2023 on thousands of claims. DoctorNow repeatedly addressed this issue with Mr. Jameson and Ms. Trivett, yet Defendants did not take the promised corrective action to resolve the matter.

112. DoctorNow is informed and believes, and on that basis alleges, that Mr. Jameson and Ms. Trivett, on behalf of Defendants, knew that their representations to DoctorNow were false and that Defendants secretly had no intention of reimbursing DoctorNow based on its published rates. Defendants concealed from DoctorNow their true intention to not pay DoctorNow. DoctorNow is informed and believes, and on that basis alleges, that Defendants deliberately concealed their true intentions and mispresented coverage and reimbursement for COVID-19 Testing and Services to induce DoctorNow to keep testing Defendants' insureds for COVID-19 during the pandemic, all to the financial detriment and harm of DoctorNow.

113. DoctorNow relied to its detriment on Mr. Jameson and Ms. Trivett's representations and omissions on behalf of Defendants, by continuing to provide Covid-19 Testing and Services to Defendants' insureds but not being reimbursed in accordance with the law and Defendants' representations.

114. DoctorNow's reliance on Mr. Jameson and Ms. Trivett's representations

- 28 -

FIRST AMENDED COMPLAINT

on behalf of Defendants was justifiable in that DoctorNow had no reason to doubt the truthfulness of Defendants' representations about coverage and reimbursement for its Covid-19 Testing and Services.

115. Defendants deliberately misled DoctorNow by falsely assuring proper reimbursement for COVID-19 Testing and Services claims. Their hidden agenda was to induce DoctorNow to provide services without compensation. To achieve this, Defendants intentionally prolonged and eventually ignored DoctorNow's demands for rightful payment, in defiance of federal and state mandates. This deliberate strategy allowed millions of dollars in claims for COVID-19 Testing and Services to accumulate without payment, aligning with the Defendants' preconceived plan.

116. Mr. Jameson and Ms. Trivett's concealment of material facts and intentional misrepresentations on behalf of Defendants, inducing DoctorNow's reliance thereon, was the direct and proximate cause of DoctorNow's loss, which DoctorNow would not have sustained but for Defendants' fraud. As a result of Defendants' fraud, DoctorNow is entitled to an award of damages in an amount to be proven at trial, but no less than $5,778,665.99, plus penalties, interest, and, *inter alia*, attorney's fees. Additionally, DoctorNow is entitled to an award of punitive damages against Defendants pursuant to Civil Code section 3294, in an amount to be proven at trial, but no less than $5,778,655.99, as Defendants acted with oppression, fraud, or malice in perpetrating this fraud against DoctorNow. DoctorNow is not seeking reimbursement for any claims for which it does have a valid assignment.

## THIRD CAUSE OF ACTION

(Against All Defendants for Negligent Misrepresentation)

117. DoctorNow restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

118. Defendants represented to DoctorNow that its COVID-19 Tests and Services would be reimbursed at the published cash price. Relying on these representations, DoctorNow administered said Tests and Services to Defendants'

- 29 -

insureds, trusting that Defendants would honor the published cash price. DoctorNow's reliance on Defendants' representations was reasonable and led to the provision of thousands of tests to Defendants' insureds, invoiced at the published cash price. Consequently, DoctorNow incurred substantial costs in providing these services, including technology, labor, and supplies.

119. Contrary to Defendants' representations, DoctorNow's published cash price was not honored. Evidence of this falsehood lies in the thousands of COVID-19 claims submitted by DoctorNow to Defendants, many of which were either denied or reimbursed at an amount lower than the published cash price. Defendants lacked reasonable grounds to believe the accuracy of their representations at the time they were made. Mr. Jameson and Ms. Trivett, acting on behalf of Defendants, knowingly made these representations to induce DoctorNow to continue providing services to Defendants' insureds, despite Defendants having no intention of honoring DoctorNow's cash rate or engaging in good-faith negotiations.

120. As a direct consequence of Defendants' false representations, DoctorNow suffered harm. DoctorNow's reliance on Defendants' representations was a substantial factor in causing this harm. As a result, DoctorNow is entitled to judgment against Defendants in an amount to be determined at trial, which is not less than $5,778,655.99, plus penalties, interest, and, *inter alia*, attorney's fees. DoctorNow is not seeking reimbursement for any claims for which it does have a valid assignment.

## **FOURTH CAUSE OF ACTION**

(Against All Defendants for Negligence)

121. DoctorNow restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

122. Defendants, at all times mentioned, were under a statutory duty to comply with section 6001(a) of the FFCRA, section 3202(a)(2) of the CARES Act, and section 1342.2 of the Cal. Health & Saf. Code.

- 30 -

FIRST AMENDED COMPLAINT

123. Defendants' conduct, including payment of certain claims for COVID-19 Testing and Services submitted by DoctorNow, established a duty of care.

124. Defendants, by denying payment and underpaying on claims submitted to them by DoctorNow for COVID-19 Testing and Services, violated section 6001(a) of the FFCRA, section 3202(a) of the CARES Act, and section 1342.2 of the Cal. Health & Saf. Code, and therefore, breached their duty.

125. Defendants' violation of these laws and breach of their duty has caused injury to DoctorNow.

126. Defendants' actions and omissions were negligent and per se negligent.

127. DoctorNow was injured, harmed, and damaged because of Defendants' actions, omissions, and breaches as alleged herein. The harm to DoctorNow resulting from Defendants' breach of their duties under the federal and state statutes at issue was certain because DoctorNow submitted its claims to Defendants for the COVID-19 Testing and Services, and Defendants did not pay or did not fully pay the claims as required under federal and state law.

128. The injury suffered by DoctorNow is the exact injury that section 6001(a) of the FFCRA, section 3202(a) of the CARES Act, and section 1342.2 of the Cal. Health & Saf. Code was designed to prevent.

129. DoctorNow is a health care provider of COVID-19 Testing and Services that section 6001(a) of the FFCRA, section 3202(a) of the CARES Act, and section 1342.2 of the Cal. Health & Saf. Code was specifically designed to protect.

130. A special relationship was created under the circumstances as DoctorNow was the intended beneficiary of the transactions with Defendants (which benefited Defendants and their insureds), the harm to DoctorNow was foreseeable, Defendants had a duty and a statutory duty to DoctorNow to properly pay for COVID-19 Testing and Service, and DoctorNow was harmed by Defendants' negligence in carrying out the transactions.

131. DoctorNow is entitled to judgment against Defendants in an amount to

FIRST AMENDED COMPLAINT

be determined at the trial of this matter.  As a result of Defendants' actions, omissions, and breaches, Defendants owe DoctorNow an amount not less than $5,778,655.99, plus penalties, interest, and, *inter alia*, attorney's fees.   DoctorNow is not seeking reimbursement for any claims for which it does have a valid assignment.

## FIFTH CAUSE OF ACTION

### (Against All Defendants for Unjust Enrichment)

132.   DoctorNow restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

133.   Under the belief that claims for COVID-19 Testing and Services would be fully paid for and reimbursed by Defendants as required by federal and state law, DoctorNow provided and continued to provide COVID-19 Testing and Services to patients insured by Defendants, thereby conferring a benefit to Defendants.

134.   Defendants knew, understood, and always accepted that DoctorNow was undertaking to perform beneficial COVID-19 Testing and Services for individuals insured by them and that such Testing and Services were not free.

135.   As a result of Defendants' payment denials and underpayment on the claims submitted to them by DoctorNow for COVID-19 Testing and Services, Defendants have been unjustly enriched.  As a result of Defendants' actions and omissions, Defendants owe DoctorNow an amount not less than $5,778,655.99, plus penalties, interest, and, *inter alia*, attorney's fees.

DoctorNow is not seeking reimbursement for any claims for which it does have a valid assignment.

## SIXTH CAUSE OF ACTION

### (Against All Defendants for Quantum Meruit)

136.   DoctorNow restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

137.   Defendants knew, understood, and always accepted that DoctorNow was undertaking to perform beneficial COVID-19 Testing and Services for individuals

- 32 -

insured by them and that such Testing and Services were not free.

138. Defendants, through their conduct, including through the payment of certain claims for COVID-19 Testing and Services submitted by DoctorNow, requested that DoctorNow perform and continue to perform COVID-19 Testing and Services for Defendants' benefit and the benefit of Defendants' insureds.

139. Recovery in quantum meruit is appropriate as DoctorNow has enriched Defendants by performing requested services for the individuals insured by Defendants, and Defendants cannot now refuse to make payment for the value of the COVID-19 Testing and Services performed by DoctorNow.

140. DoctorNow is entitled to recover the value of the services provided to patients insured by Defendants. As a result of Defendants' actions and omissions, Defendants owe DoctorNow an amount not less than $5,778,665.99, plus penalties, interest, and, *inter alia*, attorney's fees. DoctorNow is not seeking reimbursement for any claims for which it does have a valid assignment.

## **SEVENTH CAUSE OF ACTION**

(Against All Defendants for Goods and Services Rendered)

141. DoctorNow restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

142. Defendants, through their conduct, including through the payment of certain claims for COVID-19 Testing and Services submitted by DoctorNow, requested that DoctorNow perform and continue to perform COVID-19 Testing and Services for Defendants' benefit.

143. DoctorNow performed COVID-19 Testing and Services pursuant to Defendants' implied request.

144. DoctorNow has not been paid and/or has not been fully paid for the COVID-19 Testing and Services.

145. Defendants owe DoctorNow an amount of not less than COVID-19 Testing and Services. As a result of Defendants' actions and omissions, Defendants

- 33 -

FIRST AMENDED COMPLAINT

owe DoctorNow an amount not less than $5,778,665.99, plus penalties, interest, and, *inter alia*, attorney's fees.

## EIGHTH CAUSE OF ACTION

(Against All Defendants for Money Had and Received)

146.    DoctorNow restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

147.    Defendants, through payments made by their insureds, received money that was intended, in part, to be used for the benefit of and belonged to DoctorNow, an out-of-network health care provider that provided COVID-19 Testing and Services to Defendants' insureds.  DoctorNow helped reduce the spread of COVID-19 among Defendants' insureds through the COVID-19 Testing and Services it performed, which in turn saved lives (priceless) and helped Defendants avoid numerous costly hospitalization charges.

148.    The money received by Defendants was not used for the benefit of DoctorNow.

149.    Instead, Defendants continue to fail and refuse to remit payment to DoctorNow for COVID-19 Testing and Services as required by federal and California law.  As a result of Defendants' actions and omissions, Defendants owe DoctorNow an amount not less than $5,778,665.99, plus penalties, interest, and, *inter alia*, attorney's fees.

## NINTH CAUSE OF ACTION

(Against All Defendants for Open Book Account)

150.    DoctorNow restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

151.    DoctorNow and Defendants had financial transactions with each other involving the payment for health care services performed by DoctorNow for the benefit of Defendants and their insureds.

/ / /

- 34 -

FIRST AMENDED COMPLAINT

152. DoctorNow, in the regular course of business, kept an electronic account of the debits and credits involved in the financial transactions between DoctorNow and Defendants.

153. Defendants owe DoctorNow money on the account in an amount of not less than $5,778,665.99, plus penalties, interest, and, *inter alia*, attorney's fees.

**TENTH CAUSE OF ACTION**

(Against All Defendants for Account Stated)

154. DoctorNow restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

155. Defendants owe DoctorNow money from previous financial transactions involving the payment for health care services performed by DoctorNow for the benefit of Defendants and their insureds.

156. Defendants, by beginning to pay DoctorNow for its COVID-19 Testing and Services claims in 2020, and by other words and conduct, agreed that the amount DoctorNow claimed to be due from Defendants herein is the correct amount owed for each claim for Testing and Services.

157. Defendants, by beginning to pay DoctorNow for its COVID-19 Testing and Services claims in 2020, and by other words and conduct, promised to pay DoctorNow the stated amount owed for each claim.

158. As a result, Defendants owe DoctorNow an amount not less than $5,778,665.99, plus penalties, interest, and, *inter alia*, attorney's fees.

**ELEVENTH CAUSE OF ACTION**

(Against All Defendants for Violation of Cal. Health & Saf. Code Section 1342.2)

159. DoctorNow restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

160. Defendants constitute a health care service plan as that term is referenced in section 1342.2 of the Cal. Health & Saf. Code.

/ / /

- 35 -

FIRST AMENDED COMPLAINT

161. The COVID-19 Testing and Services that DoctorNow provided to individuals insured by Defendants constitute COVID-19 diagnostic testing and services as referenced in section 1342.2 of the Cal. Health & Saf. Code.

162. DoctorNow is an out-of-network provider that did not have a negotiated rate with Defendants for COVID-19 diagnostic testing and health care services related to testing.

163. In California, health insurers, like Defendants, have an independent obligation to pay and reimburse providers like DoctorNow under section 1342.2 of the Health & Saf. Code. This California requirement is independent of and in addition to federal law, as nothing in Cal. Health & Saf. Code section 1342.2 releases health insurers from reimbursement obligations under federal laws, such as the CARES Act and FFCRA. In this regard, Section 1342.2 is clear: "This section does not relieve a health care service plan from continuing to cover testing as required by federal law and guidance." Cal. Health & Saf. Code § 1342.2(f).

164. Defendants, despite numerous and persistent demands and requests by DoctorNow, failed and refused to provide adequate reimbursement for claims submitted to them by DoctorNow for COVID-19 Testing and Services.

165. Based on the above, DoctorNow has been injured. As a result, DoctorNow is entitled to judgment against Defendants in an amount to be determined at trial of this matter, which is not less than $5,778,665.99, plus penalties, interest, and, *inter alia*, attorney's fees. DoctorNow is not seeking reimbursement for any claims for which it does have a valid assignment.

## **TWELFTH CAUSE OF ACTION**

(Against All Defendants for Promissory Estoppel)

166. DoctorNow restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

167. In addition to Defendants hereinabove statutory obligations, Defendants promised insureds and DoctorNow that they would cover and pay in full the costs for

- 36 -

COVID-19 Testing and Services. The insureds and DoctorNow relied on Defendants' promises, and such reliance was reasonable and justified.

168. Defendants knew that by their actions and omissions, their payments and communications, they merely intended for insureds and DoctorNow to rely on those promises, knowing full well that they would later refuse to pay a substantial number of claims that would grow over time.

169. The insureds did not know that Defendants intended only for them to believe Defendants would pay in full for COVID-19 Testing and Services, without actually intending to pay for the Tests and Services.

170. Likewise, DoctorNow did not know that Defendants intended only for DoctorNow to believe Defendants would pay in full for COVID-19 Testing and Services, without actually intending to pay for the Tests and Services, especially because Defendants paid DoctorNow in full on some of the claims.

171. Defendants, in fact, did not pay DoctorNow in full for the COVID-19 Testing and Services, and the substantial number of claims DoctorNow later submitted to them.

172. Defendants are or should be estopped from acting contrary to their promises and statutory obligations.

173. Consequently, Defendants caused DoctorNow to suffer damages, for which Defendants are liable, in the amount of at least $5,778,655.99, plus penalties, interest, and, *inter alia*, attorney's fees and costs. DoctorNow is not seeking reimbursement for any claims for which it does have a valid assignment.

## THIRTEENTH CAUSE OF ACTION

(Against All Defendants for Declaratory and Injunctive Relief)

174. DoctorNow restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

175. Under the FFCRA, the CARES Act, Cal. Health & Saf. Code, and other

- 37 -

FIRST AMENDED COMPLAINT

relevant law, health insurers, like Defendants, are required to fully cover and provide reimbursement on claims submitted to them for COVID-19 Testing and Services at the provider's published cash price listed on its public website.

176.    Defendants improperly denied payment, failed to pay, and underpaid on claims for COVID-19 Testing and Services submitted to them by DoctorNow and other providers in violation of the FFCRA, the CARES Act, Cal. Health & Saf. Code.

177.    Defendants implemented practices and procedures that resulted in Defendants' denial of payment, failure to pay, and underpayment on claims for COVID-19 Testing and Services submitted to them by DoctorNow and other providers in violation of the FFCRA, the CARES Act, and Cal. Health & Saf. Code.

178.    DoctorNow seeks a declaration that Defendants' practice of failing to reimburse claims for COVID-19 Testing and Services at the prices listed on DoctorNow's public website violates the FFCRA section 6001(a), CARES Act section 3202(a), and the Cal. Health & Saf. Code.

179.    A declaration should also issue stating that pursuant to the FFCRA section 6001(a)(2), CARES Act section 3202(a), and Cal. Health & Saf. Code section 1342.2, Defendants are prohibited from improperly denying claims for COVID-19 Testing and Services on grounds that, among other things, DoctorNow is not in Defendants' network, claims were not timely submitted, partial payment was made directly to patients, reimbursement is owed from a third-party via a capitation agreement, Defendants require additional records, or Defendants' internal policy is to not pay for specific items or CPT Codes.

180.    DoctorNow seeks an injunction that Defendants cease violating the FFCRA, CARES Act, and Cal. Health & Saf. Code, and that Defendants correctly reimburse DoctorNow for COVID-19 Testing and Services at its published cash prices on its public website.

181.    DoctorNow also seeks injunctive relief to order Defendants to cease

- 38 -

FIRST AMENDED COMPLAINT

violating the FFCRA, CARES Act, and Cal. Health & Saf. Code by turning over the amounts that DoctorNow earned for the COVID-19 Testing and Services provided during the pandemic based on the rates charged to Defendants.

182. DoctorNow also seeks injunctive relief to order Defendants to implement policies and procedures to reimburse DoctorNow and other out-of-network providers the amounts listed on the providers' public website for claims submitted for COVID-19 Testing and Services during the COVID-19 PHE.

## V.

## **PRAYER FOR RELIEF**

**WHEREFORE**, DoctorNow prays for judgment and damages against each of the Defendants as follows:

1. General damages in an amount to be determined by proof at trial;

2. Exemplary and punitive damages as a result of Defendants' malicious, fraudulent and oppressive conduct in the face of the COVID-19 pandemic;

3. Attorneys' fees pursuant to applicable law, including, but not limited to, attorney's fees awardable under *Brandt v. Superior Court*, 37 Cal. 3d (1985) and Cal. Bus. & Prof. Code section 17200, *et seq.*;

4. Prompt payment penalties at a rate of 15 percent per annum, as per Cal. Health & Saf. Code section 1371, and any other applicable law or statute authorizing prompt payment penalties;

5. Prejudgment interest and post-judgment interest as authorized by law, including, but not limited to, California Civil Code sections 3287 and 3288;

6. Preliminary and permanent injunctive relief, including restitution and disgorgement for the amounts unlawfully withheld by Defendants and owed to DoctorNow;

7. Declaratory relief ordering that Defendants cease violating the FFCRA, CARES Act, and Cal. Health & Saf. Code and provide proper reimbursement for COVID-19 Testing and Services submitted by DoctorNow and other providers;

FIRST AMENDED COMPLAINT

8.    Injunctive relief enjoining Defendants from creating or implementing policies and procedures that violate the FFCRA, CARES Act, and Cal. Health & Saf. Code and from implementing policies and procedures that violate such laws;

9.    Costs and civil penalties as authorized by law;

10.    All other relief that may be authorized by law but is not explicitly or specifically requested elsewhere in this Prayer; and

11.    Any other and further relief that the Court deems just and proper.

Date: October 16, 2024                    NOVIAN & NOVIAN

By: */s/ Matthew Novian*
            Farhad Novian
             Jamie Vogel
            Matthew Novian
            Attorneys for Plaintiff DoctorNow, Inc.

## DEMAND FOR JURY TRIAL

Plaintiff, DoctorNow, hereby demands a jury trial against Defendants, and each of them, on all matters for which a jury trial may be had.

Date: October 16, 2024                    NOVIAN & NOVIAN

By: */s/ Matthew Novian*
            Farhad Novian
            Matthew Novian
            Attorney for Plaintiff

- 40 -

FIRST AMENDED COMPLAINT